IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AL-AWWAL SHIMOYAMA, | : | CIVIL ACTION |
| Plaintiff, | : | NO. 05-6299 |
| v. | : | |
| CITY OF PHILADELPHIA, et al., | : | |
| Defendants. | : | |

**MEMORANDUM AND ORDER**

Giles, J.                                                                                                                  January 29, 2008

AND NOW, this 29th day of January, 2008, upon consideration of Defendant City of Philadelphia's Motion for Summary Judgment and Plaintiff Al-Awwal Shimoyama's Response thereto, it is hereby ORDERED that Defendant City of Philadelphia's Motion is GRANTED as to all counts and Plaintiff's claims against the City of Philadelphia are hereby DISMISSED WITH PREJUDICE. The reasons follow.

Commencing on or about October 3, 2004, Al-Awwal Shimoyama ("Plaintiff") was an inmate at the Currant-Fromhold Correctional Facility ("CFCF") in Philadelphia. He alleges that he was beaten, kicked, and severely injured by corrections officers at CFCF. He further alleges that he reported that he had been beaten by corrections officers and that no investigation was commenced and no report was made regarding his complaints.

In October 2005, Plaintiff filed a Complaint against the City in the Court of Common Pleas for Philadelphia County claiming violations of 42 U.S.C. § 1983 and the Pennsylvania

Constitution. On December 5, 2005, the action was removed to this court. Subsequently, Plaintiff amended his complaint three times, claiming state and federal causes of action against four institutional defendants and four correctional officers. Plaintiff's Third Amended Complaint (Docket No. 64) asserts both federal and state claims against all defendants. Count I alleges violations of 42 U.S.C. § 1983 and the United States Constitution; Count II alleges violations of the Pennsylvania Constitution, Assault, and Battery; Count III alleges negligent and intentional infliction of emotional distress; and Count IV is a claim for punitive damages. Claims against three additional defendants were dismissed with prejudice such that the remaining defendants in the case are the City and four correctional officers: Normando Noland, Jose Marte, Moses Jennings, and Michael Davis. The City now moves for summary judgment and argues that (1) Plaintiff's § 1983 claim against the City fails as a matter of law because he has presented no evidence that the City had a custom, policy, or practice that exhibited deliberate indifference to his constitutional rights; and (2) Plaintiff's state law tort claims are barred by the Political Subdivision Tort Claims Act.

**I. Legal Standard for Summary Judgment**

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). In order to defeat a motion for summary judgment, disputes must be both 1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and 2) genuine, meaning the evidence must be such that a reasonable jury could

return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322-23.  In reviewing a motion for summary judgment, the court "does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion."  Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1127 (3d Cir. 1995).

### II.  Federal Civil Rights Claims

Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States.  42 U.S.C. § 1983.  A municipal defendant may be held liable under § 1983 when the execution of its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  Monell v. Dept. of Social Services, 436 U.S. 658, 694 (1978).  There is no liability under § 1983 on a theory of respondeat superior.  Id.

For purposes of Monell liability, "A government policy or custom can be established in two ways.  Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict.  A course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of state officials are so permanent and well settled as to virtually constitute law."  Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469 (1986), Monell, 436 U.S. at 690).  While acquiescence by an official

with final authority as a decisionmaker is sufficient to establish governmental custom, the Third Circuit has noted that "the responsible decisionmaker [need not] be specifically identified by the plaintiff's evidence." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (citing Andrews, 895 F.2d at 1480).

Proof of the existence of a policy or custom is not enough to establish § 1983 liability. Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). A plaintiff must also show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom, and a plaintiff must demonstrate a causal link between the policy at issue and the deprivation of constitutional rights alleged. Id.

Upon detailed examination of the summary judgment record, this Court finds that Plaintiff has presented insufficient evidence to support his § 1983 claim against the City. Plaintiff has presented no evidence of official actions that indicate a policy, practice, or custom on the part of the City that would result in Monell liability for Plaintiff's alleged constitutional injury.

### A. Excessive Force

Plaintiff alleges that several corrections officers employed by the City used excessive force against him in violation of his due process rights established by the United States Constitution. The bulk of Plaintiff's Response Brief in Opposition to Summary Judgment addresses the excessive force claims alleged against individual corrections officer defendants. (Pl.'s Resp. in Opp'n to Summ. J. 7-11.) Because the City is the only defendant that filed the instant Motion for Summary Judgment, the court addresses Plaintiff's excessive force claim against only the City.

Plaintiff does not allege that the City's written policy regarding the use of force is unconstitutional; rather, Plaintiff alleges constitutional violations based on City practice or custom. (See, e.g., Third Am. Compl. ¶¶ 40, 42, 44.) It is undisputed that City prison policy clearly forbids the use of excessive force: "It is the policy of the System to ensure that force is used only when necessary and only to the degree required to control the inmate(s) and maintain or restore order. Force is intended only as a control measure and will not be used as punishment." (City's Mot. for Summ. J., Ex. E at 2 ("Use of Force Policy").) Furthermore, City policy requires each staff person who uses or witnesses the use of force upon an inmate to report the incident by the conclusion of that shift to a supervisor who will in turn submit the reports to an investigating officer. (Use of Force Policy 4-5.) Complete investigations are to be forwarded to the institution's Deputy Warden and Warden. (Id. at 22.)

Plaintiff fails to meet the Monell standard because he has presented no facts supporting a practice or custom of excessive force by the City. Plaintiff has presented no facts indicating that the Warden or any other known or unknown city policymaker knew of, condoned, or acquiesced in any alleged unconstitutional behavior in violation of the prison system's use of force policy. Although Plaintiff presented some testimonial evidence that might indicate prior incidents of excessive force upon inmates (see Pl.'s Resp. in Opp'n to Summ. J., Ex. L at 35-37 ("Verdell Dep.")), Plaintiff has not shown that the Warden or any other decisionmaker knew of the alleged incidents or that the use of excessive force was so permanent that the Warden must have known about it. Summary judgment is granted in favor of the City on Plaintiff's excessive force claim.

### B.     Failure to Train

The court next addresses whether any genuine issue of material fact precludes summary

judgment on Plaintiff's allegations that the City failed to train its employees and contractors to report and investigate injuries properly.  (See Pl.'s Resp. in Opp'n to Summ. J. 12.)  As with other § 1983 claims, to establish liability for a "failure to train" claim, a plaintiff need not prove a municipality has a formal policy of not training its employees.  See City of Canton v. Harris, 489 U.S. 378, 390 (1989) ("It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees.").  A municipality with a constitutional policy could nonetheless be liable on a failure to train claim.  "[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."  Id.  Nonetheless, an allegation of "failure to train" can be the basis for liability under § 1983 only in limited circumstances.  Id. at 387.  "City of Canton teaches that municipal liability for failure to train cannot be predicated solely on a showing that the City's employees could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury."  Colburn v. Upper Darby Tp., 946 F.2d 1017, 1029-30 (3d Cir. 1991).  To succeed on a failure to train claim, a plaintiff must establish that the failure amounts to deliberate indifference to the constitutional rights of the person with whom the municipal agents come in contact.  See id. at 1028.  In other words, "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable for such a failure under § 1983." City of Canton, 489 U.S. at 388.  In addition, the identified training deficiency must be closely related to the ultimate constitutional injury.  Id. at 391; Colburn, 946 F.2d at 1030.

Plaintiff asserts several "failure to train" claims against the City.  Plaintiff alleges the City failed to adequately train its officers, contractors, and other employees in the areas of 1) documenting, reporting, investigating and treating injuries suffered by incarcerated persons; 2) the proper exercise of police powers, including the use of force, use of restraints, and use of sedation; and 3) identifying and investigating corrections officers who are the subject of prisoner complaints.  (See Third Am. Compl. ¶¶ 45-46.)  In essence, Plaintiff alleges the City failed to train its officers, contractors, and other employees to follow prison policies.

All Plaintiff's failure to train claims against the City fail as a matter of law because nothing in Plaintiff's exhibits would justify a trier of fact to conclude that the City had a conscious disregard of a known or obvious danger with respect to training.  In each instance, Plaintiff has failed to present evidence of an unconstitutional training deficiency, the City's deliberate indifference to the need for more or different training, and/or that a training deficiency caused his alleged constitutional injury.

Plaintiff's evidence indicates that all staff on prison premises must adhere to prison policies.  (Pl. Resp. in Opp'n to Summ. J., Ex. G at 44-45 ("Blackmon Dep.").)  The City's written policies and the testimony of several individuals establish that allegations of inmate injuries at the hands of prison staff must be reported to prison officials.  (See Use of Force Policy. See also Blackmon Dep. 45-47; Pl.'s Resp. in Opp'n to Summ. J., Ex. F at 46 ("Tomaszewski Dep.").)  When Plaintiff complained to treating physicians that he had been beaten by corrections officers, the medical staff members noted his complaints in appropriate medical records.  (Pl. Resp. in Opp'n to Summ. J. 3-4; Pl. Resp. in Opp'n to Summ. J., Ex. A ("Shimoyama Dep."); Pl. Resp. in Opp'n to Summ. J., Ex. K ("Shimoyama Med. R.").)

Nonetheless, according to Plaintiff, no report was made and no investigation was conducted. (Pl. Resp. in Opp'n to Summ. J. 3-4.)  Plaintiff claims prison staff were not trained to report inmate allegations of beatings, and Plaintiff presents the testimony of one of his prison physicians, Dr. Verdell, who testified that he was not trained to report inmate complaints of injuries at the hands of corrections officers.  (Pl. Resp. in Opp'n to Summ. J., Ex. L at 10-11, 13-14 ("Verdell Dep.").)

Despite Dr. Verdell's testimony, Plaintiff has not demonstrated that the City's alleged inactions related to reporting and investigating inmate injuries or use of force allegations are practices "so permanent and well settled" as to "have the force of law." Monell, 436 U.S. at 691. Plaintiff has presented no evidence of even one prior instance where City prison staff failed to report or investigate inmate injuries or allegations against corrections officers.  Plaintiff has presented no evidence that the Warden knew of any alleged training deficiencies or that the alleged training deficiencies were practices so permanent that the Warden must have known. Finally, even assuming, arguendo, that a deficiency or lack of training existed, Plaintiff has not shown that any such deficiency caused his alleged constitutional injury.  Dr. Verdell did not contend that he would have reported Plaintiff's complaints even if he had been trained to do so. To the contrary, Dr. Verdell's reasons for not reporting Plaintiff's complaints were entirely unrelated to training.  Dr. Verdell testified that private communications among staff led him to fear for his safety if he reported allegations against officers, even though he knew of no event of harm or threat of harm to any staff person.  (Verdell Dep. 15-16, 39-41.)  Further, Plaintiff has presented no expert testimony that any training was necessary to report what would be tantamount to a criminal act either to the Warden or to Dr. Verdell's employer, MHM Correctional Services ("MHM"), an independent contractor.  Dr. Verdell did not claim he told

his supervisor at MHM or the prison Warden about any of these communications among staff. Plaintiff does not claim the Warden otherwise knew of these communications or endorsed Dr. Verdell's viewpoint. Plaintiff has presented no evidence that the City knew of the alleged problem when contracting with MHM or any other contractor. Indeed, Plaintiff has presented no evidence that the Warden was aware that even a single prior claim of excessive force had not been reported or investigated.

Having found that there is no identifiable custom within the meaning of Monell to establish City liability, and that any practices were not conducted with deliberate indifference, the court grants summary judgment in the City's favor on Plaintiff's failure to train claims.

**III. State Law Claims**

The City raises the defense of sovereign immunity to Plaintiff's state law claims. The Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § 8541, et seq. ("The Tort Claims Act"), controls the question of immunity over the state law claims. The Tort Claims Act makes local governments and their employees immune to suit except for claims falling within eight narrow statutory exceptions: vehicle liability; care, custody, or control of personal property; real property; trees, traffic controls and street lighting; utility services facilities; street and sidewalk conditions; and care, custody, and control of animals. 42 Pa.C.S.A. § 8542(b).

Because Plaintiff's claims do not fall within the exceptions set out in § 8542, the City is immune from Plaintiff's state tort claims. Summary judgment is granted in the City's favor on Plaintiff's claims of Assault, Battery; Negligent Infliction of Emotional Distress, and Intentional Infliction of Emotional Distress.

**IV. Punitive Damages**

Because the court grants summary judgment in favor of the City, Plaintiff's claims for punitive damages must fail.  Moreover, municipalities are immune from punitive damages under § 1983.  <u>Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271 (1981).


BY THE COURT:


<u>     S/ James T. Giles     </u>
                                    J.